UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|    ) | |
|    Plaintiff,    ) | |
|    ) | |
|    v.    ) | Civil No. |
|    ) | |
| C.A.I., INC.;    ) | |
| ARNEL COMPANY, INC.;    ) | |
| ROY A. NELSON AS TRUSTEE OF    ) | |
| NELSON DANVERS REALTY TRUST;    ) | |
| and SARTORELLI REALTY, LLC,    ) | |
|    ) | |
|    Defendants.    ) | |
|    ) | |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United

States, and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as

follows:

## NATURE OF ACTION

1.      This is a civil action brought pursuant to Section 107(a) of the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C.

§§ 9607(a), against Defendants C.A.I., Inc. ("CAI"), Arnel Company, Inc. ("Arnel"), Roy A.

Nelson as Trustee of the Nelson Danvers Realty Trust ("Nelson"), and Sartorelli Realty, LLC

("Sartorelli Realty") for the recovery of costs incurred by the United States in response to the

release or threatened release of hazardous substances at or from the Danversport Superfund Site,

located at 128R Waters Street (a/k/a 126R Waters Street) Danvers, Essex County, Massachusetts

("Site").  This action further seeks a declaration, pursuant to Section 113(g)(2) of CERCLA, 42

U.S.C. § 9613(g)(2), that the Defendants are liable for further response costs the United States

may incur as a result of a release or threatened release of hazardous substances at or from the

Site. This action also seeks civil penalties, pursuant to Sections 113(a) and (b) of the Clean Air

Act ("CAA"), 42 U.S.C. §§ 7413(a) and (b), against CAI and Arnel, for violations of Section

112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1) (the "General Duty Clause"), with respect to a

facility for the manufacture of, *inter alia*, ink and paint products ("Danvers Facility"), formerly

located at the Site.

JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to

Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b); Section 113(b) of the

CAA, 42 U.S.C. 7413(b); and 28 U.S.C. §§ 1331, 1345 and 1355.

3.     Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C.

§ 9613(b); Section 113(b) of the CAA, 42 U.S.C. 7413(b); and 28 U.S.C. § 1391(b) and (c) and

1395(a), because the events giving rise to claims alleged in this Complaint occurred in this

judicial district, the Defendants are located in this District, and each Defendant resides(ed), is

(was) located, or has (had) its principal place of business in this judicial district at all times

relevant hereto.

4.     Notice of commencement of this action has been given to the Commonwealth of

Massachusetts pursuant to Section 113(b) of the CAA, 42 U.S.C. §7413(b).

- 2 -

PARTIES

5.      Plaintiff is the United States of America acting at the request of the Administrator

of EPA.  Authority to bring this action is vested in the United States Department of Justice

pursuant to Section 305 of the CAA, 42. U.S.C. § 7605, and 28 U.S.C. §§ 516 and 519.

6.      Defendant CAI is a corporation organized under the laws of the Commonwealth

of Massachusetts.

7.      Defendant CAI is a "person" within the meaning of Sections 101(21) and 107 of

CERCLA, 42 U.S.C. §§ 9601(21) and 9607, and Section 302(e) of the CAA, 42 U.S.C.

§ 7602(e).

8.      Defendant Arnel is a corporation organized under the laws of the Commonwealth

of Massachusetts.

9.      Defendant Arnel is a "person" within the meaning of Sections 101(21) and 107 of

CERCLA, 42 U.S.C. §§ 9601(21) and 9607, and Section 302(e) of the CAA, 42 U.S.C.

§ 7602(e).

10.     Defendant Nelson is a resident of Topsfield, Massachusetts, and is the sole trustee

of the Nelson Danvers Realty Trust, a nominee trust organized under the laws of the

Commonwealth of Massachusetts.

11.     Nelson is a "person" within the meaning of Sections 101(21) and 107 of

CERCLA, 42 U.S.C. §§ 9601(21) and 9607.

12.     Defendant Sartorelli Realty is a limited liability corporation organized under the

laws of the Commonwealth of Massachusetts.

13.     Sartorelli Realty is a "person" within the meaning of Sections 101(21) and 107 of CERCLA, 42 U.S.C. §§ 9601(21) and 9607.

<u>GENERAL ALLEGATIONS</u>

14.     The Danversport Superfund Site is located in Danvers, Essex County, Massachusetts. The Site includes the area formerly occupied by the Danvers Facility. The Site is bordered to the north by residential properties and Bates Street, to the east and south by Liberty Marina and the Waters River, and to the west by Water Street and industrial facilities.

15.     CAI and Arnel operated the Danvers Facility at all times relevant hereto for the manufacture of inks, stains, lacquers, coatings, adhesives, thinners, and paints (collectively, "ink and paint products").

16.     As part of their ink and paint product manufacturing activities at the Danvers Facility, Defendants CAI and/or Arnel produced, processed, handled and/or stored various flammable and/or reactive substances, including but not limited to, n-propyl alcohol, isopropyl alcohol, n-butyl acetate, acetone, toluene, methyl ethyl ketone, ethyl alcohol, propyl alcohol, butyl alcohol, ethyl acetate, heptane, and nitrocellulose.

17.     The aforesaid substances were stored by CAI and/or Arnel at the Danvers Facility in drums, vats, totes, bulk above-ground and underground storage tanks, and other containers, for use during manufacturing processes at the Danvers Facility.

18.     N-propyl alcohol, isopropyl alcohol, n-butyl acetate, acetone, toluene, methyl ethyl ketone, ethyl alcohol, propyl alcohol, butyl alcohol, ethyl acetate, heptane, and nitrocellulose are substances that may, as the result of exposures associated with their release to

- 4 -

the air, cause death, injury or property damage due to their toxicity, reactivity, flammability, volatility, or corrosivity.

19.     The aforesaid substances are extremely hazardous substances within the meaning of Section 112(r)(1) of the CAA, 42 U.S.C. §7412(r)(1).

20.     Defendants CAI and Arnel shared space for their manufacturing operations. The warehouse section of the Danvers Facility contained both a CAI production area and an Arnel storage area.

21.     CAI and Arnel also shared a ventilation system which included, *inter alia*, dust collectors, exhaust fans, and an air intake system.

22.     As part of CAI's operations, CAI manufactured products containing two or more of the chemicals referred to in Paragraph 18, above, in a multi-gallon vat.  The chemicals sometimes remained in the active mixing process overnight.

23.     This aforesaid procedure described in Paragraph 22 occurred at least once a month, including the night of November 21-22, 2006.

24.     During the early morning hours of November 22, 2006, an explosion and fire occurred at the Site.

25.     The explosion and ensuing fire demolished the Danvers Facility, damaging nearby homes and businesses, and boats located at the adjacent marina.

26.     Nearby residents were evacuated from their homes and several received treatment for injuries at nearby hospitals.

27.    While the fire at the Site was being extinguished, the United States Coast Guard, acting under agreement with EPA, constructed a berm to prevent chemical runoff from the firefighting from reaching nearby river waters.

28.    Drums and bulk containers formerly used at the factory remained onsite after the explosion and fire.

29.    The remaining drums and bulk containers contained, among other substances, toluene, acetone, and nitrocellulose.

30.    From November 22, 2006 to March 9, 2007, EPA performed a response action at the Site.

31.    The response action by EPA included but was not limited to:  (1) clearing debris that remained after the fire was extinguished; (2) conducting air monitoring; (3) installing erosion/siltation control devices; (4) collecting and staging the removal of drums, vats, totes and small containers containing hazardous substances; (5) transferring liquid hazardous substances from above-ground storage tanks, underground storage tanks, vats, totes and bulk tanks for transportation and disposal; (6) categorizing potentially hazardous materials and debris for disposal; (7) excavating soil from areas where materials had been staged; and (8) coordinating disposal of contaminated materials at facilities approved for disposal of hazardous waste.

32.    These response activities were carried out pursuant to EPA's emergency response authority and pursuant to an EPA Action Memorandum signed by EPA on November 29, 2006.

33.    EPA incurred over $2.4 million in response costs in connection with its response action at the Site.

34. By letter dated March 8, 2007, EPA notified the Defendants that they were potentially responsible parties with respect to the Site, and demanded reimbursement of EPA's response costs in connection with the Site.

35. The Defendants have failed to reimburse any of EPA's past response costs.

36. Upon information and belief, at all times relevant hereto, the Danvers Facility's processing areas were congested with equipment in a manner that would exacerbate the effects of a fire or explosion.

37. Upon information and belief, at all times relevant hereto, the Danvers Facility was not designed or maintained in a manner that minimizes the consequences of accidental releases of extremely hazardous substances.

38. Upon information and belief, at all times relevant hereto, the Danvers Facility did not have explosion vents or blow-out (blast) panels.

39. Upon information and belief, on numerous occasions, including the night of November 21-22, 2006, the Facility's ventilation system was not in operation while the Facility's manufacturing processes were in operation.

40. Upon information and belief, there were no automatic safety controls at the Danvers Facility, including but not limited to vapor detectors or shut-down devices for equipment.

41. Upon information and belief, the Danvers Facility lacked adequate operating procedures designed to assist in minimizing the consequences of accidental releases.

42. The November 22, 2006, explosion and fire at the Danvers Facility, released numerous chemicals, including without limitation n-propyl alcohol, isopropyl alcohol, n-butyl

- 7 -

acetate, acetone, toluene, methyl ethyl ketone, ethyl alcohol, propyl alcohol, butyl alcohol, ethyl

acetate, heptane, and nitrocellulose.

STATUTORY/REGULATORY BACKGROUND
(CERCLA)

43.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the
> defenses set forth in subsection (b) of this section –
>
> > (1) the owner and operator of . . . a facility,
> >
> > (2) any person who at the time of disposal of any
> > hazardous substance owned or operated any facility
> > at which such hazardous substances were disposed
> > of
> >
> > . . . shall be liable for –
> >
> > > (A)  all costs of removal or remedial action incurred
> > > by the United States Government . . . not
> > > inconsistent with the national contingency plan. . . .
>
> The amounts recoverable in an action under this section shall include
> interest on the amounts recoverable under subparagraphs (A) through (D).
> Such interest shall accrue from the later of (i) the date payment of a
> specified amount is demanded in writing, or (ii) the date of the expenditure
> concerned.  The rate of interest on the outstanding unpaid balance of the
> amounts recoverable under this section shall be the same rate as is
> specified for interest on investments of the Hazardous Substance
> Superfund established under sub-chapter A of chapter 98 of Title 26.

44.    The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42

U.S.C. § 9601(9).

45.    Chemicals at the Danvers Facility, including but not limited to, toluene, acetone,

and nitrocellulose, are "hazardous substances" within the meaning of Section 101(14) of

CERCLA, 42 U.S.C. § 9601(14).

- 8 -

46.    "Disposal" of hazardous substances includes discharging, depositing, dumping, spilling, leaking, or placing such substances into or on any land or water so that the substances or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters.  42 U.S.C. § 9601(29).

47.    Hazardous substances were disposed of at the Site within the meaning of Section 101(29) of CERCLA, 42 U.S.C. § 9601(29).

48.    There were "releases" and threatened "releases" of "hazardous substances" at or from the Site within the meaning of Sections 101(22) and (14) of CERCLA, 42 U.S.C. §§ 9601(22) and (14).

49.    As a result of the release and threatened release of hazardous substances at or from the Site, EPA engaged in response actions and, together with the United States Department of Justice, has incurred and continues to incur response costs, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), not inconsistent with the National Contingency Plan.

STATUTORY/REGULATORY BACKGROUND
(CAA – GENERAL DUTY CLAUSE)

50.    The CAA, 42 U.S.C. §§ 7401 *et seq.*, establishes a comprehensive scheme for air pollution prevention and control, as described in Section 101 of the CAA, 42 U.S.C. § 7401.

51.    Section 112(r) of the CAA, 42 U.S.C. § 7412(r), was enacted to prevent the accidental release and to minimize the consequences of any such release of any listed substances or any other extremely hazardous substance.

52.    Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), also known as the "General Duty Clause," provides in pertinent part:

> It shall be the objective of the regulations and programs authorized under this subsection to prevent the accidental release and to minimize the consequences of any such release of any substance listed pursuant to paragraph (3) or any other extremely hazardous substance. The owners and operators of stationary sources producing, processing, handling or storing such substances have a general duty in the same manner and to the same extent as Section 654 of Title 29 [29 U.S.C. § 654] to identify hazards which may result from such releases using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur.

53.    N-propyl alcohol, isopropyl alcohol, n-butyl acetate, acetone, toluene, methyl ethyl ketone, ethyl alcohol, propyl alcohol, butyl alcohol, ethyl acetate, heptane, and nitrocellulose are "extremely hazardous substances," either alone or in the aggregate, within the meaning of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1).

54.    The Danvers Facility was a building or structure from which an accidental release may occur, and therefore, was a stationary source within the meaning of Section 112(r)(2)(C) of the CAA, 42 U.S.C. § 7412(r)(2)(C).

55.    At all times relevant hereto, the Danvers Facility was subject to the CAA General Duty Clause, 42 U.S.C. § 7412(r)(1), regarding, among other things, the minimization of the consequences of accidental releases of extremely hazardous substances.

56.    At all times relevant hereto, CAI and Arnel were operators of a stationary source within the meaning of Section 112(a)(9) of the CAA, 42 U.S.C. § 7412(a)(9).

57.    "Accidental release" is defined in Section 112(r)(2)(A) as an "unanticipated emission of a regulated substance or other extremely hazardous substance into the ambient air from a stationary source."

58.    The release of the extremely hazardous substances, as aforesaid, from the Danvers Facility as a result of the November 22, 2006 fire and explosion, constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the CAA, 42 U.S.C. § 7412(r)(2)(A).

59.    Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes a civil judicial enforcement action for injunctive relief for violations of any requirement or prohibition of Subchapter I of the CAA (42 U.S.C. §§ 7401-7515), and to assess and recover a civil penalty up to $27,500 per day for each such violation occurring between January 30, 1997 and March 15, 2004, and up to $32,500 per day for violations thereafter occurring from March 16, 2004 through January 12, 2009, and $37,500 per day for violations occurring after January 12, 2009 (as adjusted pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701; 69 Fed. Reg. 7121 (2004) and 73 Fed. Reg. 75,340 (2008)).

## FIRST CLAIM FOR RELIEF
### (CERCLA)

60.    Paragraphs 1 through 59 of this Complaint are realleged and incorporated herein by reference.

61.    Defendant Nelson, as Trustee, is an owner of the Danvers Facility within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

62.    Defendant Nelson, as Trustee, was an owner of the Danvers Facility at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

63.    Defendant Sartorelli Realty is an owner of the Danvers Facility within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

64.    Defendant Sartorelli Realty was an owner of the Danvers Facility at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

65.    Defendant Arnel was an operator of the Danvers Facility at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

66.    Defendant CAI was an operator of the Danvers Facility at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

67.    Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), CAI, Arnel, Nelson and Sartorelli Realty are jointly and severally liable to the United States for all response costs incurred by the United States in connection with the Site, including without limitation, indirect, administrative, investigative, and enforcement costs.

68.    Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the United States is entitled to recover prejudgment interest on the response costs which it has incurred in connection with the Site.

69.    Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that CAI, Arnel, Nelson, and Sartorelli Realty are jointly and severally liable for further response costs that will be binding in any subsequent action to recover further response costs in connection with the Site.

SECOND CLAIM FOR RELIEF
(CAA – GENERAL DUTY CLAUSE)

70.    Paragraphs 1 through 69 of this Complaint are realleged and incorporated herein
by reference.

71.    CAI and Arnel were required, under the General Duty Clause, to minimize the
consequences of the release of extremely hazardous substances from the Danvers Facility such as
that which occurred at the Danvers Facility on November 22, 2006.

72.    CAI and Arnel failed to minimize the consequences of the release of extremely
hazardous substances at the Danvers Facility by not having sufficient safety measures in place,
such as a passive mitigation system, adequate ventilation while production processes were
running, automatic shut-down devices, a vapor detection system, and an uncongested workplace.

73.    Passive mitigation systems could include, but would not be limited to, vapor
detection alarms, explosion vents, or blow-out panels to mitigate the effects of an explosion and
lessen the force of an explosion such as that which occurred on November 22, 2006.

74.    As a result of their failure to minimize the consequences of an accidental release,
CAI and Arnel violated the General Duty Clause, Section 112(r)(1) of the CAA, 42 U.S.C.
§ 7412(r)(1).

75.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by
28 U.S.C. § 2461 and 31 U.S.C. § 3701, CAI and Arnel are liable for assessment of a civil
penalty of up to $27,500 per day for each such violation occurring between January 30, 1997 and
March 15, 2004, up to $32,500 per day for violations occurring from March 16, 2004 through
January 12, 2009, and $37,500 per day for violations occurring after January 12, 2009 (as
adjusted pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C.

- 13 -

§ 2461, as amended, and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701; 69

Fed. Reg. 7121 (2004) and 73 Fed. Reg. 75,340 (2008)).

PRAYER FOR RELIEF

WHEREFORE, the United States requests that this Court:

A.    Enter a judgment that the Defendants are jointly and severally liable for, and order

reimbursement of, all costs of the response action incurred by the United States in connection

with the Site, including enforcement costs and interest, pursuant to Section 107(a) of CERCLA,

42 U.S.C. § 9607(a);

B.    Enter a declaratory judgment that the Defendants are jointly and severally liable

for all future response costs incurred by the United States in connection with the Site, including

enforcement costs and interest, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C.

§ 9613(g)(2);

C.    Enter a judgment for civil penalties against Defendants CAI and Arnel for

violations of the General Duty Clause of Section 112(r)(1) of the CAA, 42 U.S.C. §7412(r)(1),

pursuant to Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b); and

D.    Grant such other relief as the Court deems just and proper.


Respectfully Submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

By:      /s/ Mary Reed
         MARY REED
         DAVID L. WEIGERT
         Trial Attorneys
         Environmental Enforcement Section
         U.S. Department of Justice
         P.O. Box 7611
         Washington, D.C.  20044-7611
         (202) 514-2580 (MR)
         mary.reed@usdoj.gov
         (202) 514-0133 (DLW)
         david.weigert@usdoj.gov

         CARMEN M. ORTIZ
         United States Attorney

         GEORGE B. HENDERSON II
         Assistant United States Attorney
         One Courthouse Way, Suite 9200
         Boston, MA 02210
         (617) 748-3272

OF COUNSEL:

AMELIA WELT KATZEN
Senior Enforcement Counsel
U.S. Environmental Protection
   Agency-Region 1
5 Post Office Square, Suite 100
Boston, MA 02109